Submitted on record and appellant's brief January 23, reversed and remanded March 24, 1980

CITY OF SALEM,
*Appellant,*
*v.*
TERRY ALLAN NOBLE,
*Respondent.*

(No. 112373, CA 15355)

CITY OF SALEM,
*Appellant,*
*v.*
CLARK ALLEN SPROULE,
*Respondent.*

(No. 112372, CA 15354)

(Cases Consolidated)

608 P2d 603

John A. Lien, Assistant City Attorney, Salem, filed the brief for appellant. With him on the brief was William J. Juza, City Attorney, Salem.

Michael Lee McDonough waived appearance for respondent.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, C.J.*

JOSEPH, P.J.

*Schwab, C.J., *vice* Lee, J., deceased.

## JOSEPH, P.J.

In a consolidated *de novo* appeal to the circuit court from two municipal court convictions[1] for driving under the influence of intoxicants in violation of ORS 487.540, defendants moved to suppress breathalyzer test results on the grounds that: (1) the machine used for the tests was not properly approved by the Oregon State Health Division, and (2) in operation of the machine for the tests a 12-second breath expiration was not utilized, as required in the applicable administrative regulation. The City of Salem appeals from the order of suppression.

In the spring of 1978, each defendant was stopped by a police officer while operating an automobile and submitted to a breath test. The breath expiration by each defendant was more than three or four seconds but less than twelve. Both tests were administered on a machine labelled "Intoxilyzer Model 4011, serial number 001235, manufactured by CMI, Incorporated, Minturn, Colorado." The machine was purchased by the City of Salem in the spring of 1977.

A model 4011 was originally produced by another manufacturer and duly approved by the Health Division. After CMI, Inc., purchased the manufacturing rights, its version of model 4011 was approved by the Health Division in January, 1977, without further testing.[2] Subsequently, the Division discovered that

---

[1] The cases were filed in Salem Municipal Court. After defendants' motions to suppress were denied in a pre-trial hearing, defendants' petitions for Writ of Review in Marion County Circuit Court were quashed for lack of jurisdiction. In the Municipal Court trial defendants were found guilty, and sentence was imposed.

[2] OAR 333-13-023 provides:

"*Intoxilyzer, Model 4011*

333-13-023 Subsequent to approval in OAR 333-13-005 to 333-13-025 of Intoxilyzer, Model 4011, and methods of operation thereof, the name and location of the manufacturer, formerly Omicron Systems Corporation, Palo Alto, California, was changed to CMI Incorporated, P.O. Drawer D, Minturn, Colorado. The designated product and methods of operation remain the same. References in said sections 333-13-005 to 333-13-025 to Omicron Systems Corporation, Palo Alto, California, refer equally as well to the new manufacturer's name and location."

[455]

the CMI model 4011 included a slope detector circuit which enabled a valid result to be obtained automatically as soon as the readings for percentage of alcohol in the blood levelled off. That could occur in less than 12 seconds. The innovation did not affect the accuracy or reliability of the test results; in both versions of model 4011 the results are produced automatically, whether in 12 seconds or less. The machine used here was tested as accurate both before and after the test was administered to defendants. The Division had not deemed the innovation significant enough to require retesting or specific certification of CMI's model 4011.

The City of Salem contends that the approval of model 4011 is valid despite the change in CMI's version, because the change did not affect the accuracy or reliability of the machine, and because the Division had determined that retesting and recertification was unnecessary. We agree. The purpose of requiring Health Division approval of breath testing equipment is to ensure accurate and reliable test results. *State v. Stover*, 271 Or 132, 147 (n 11), 531 P2d 258 (1975); *State v. Fogle*, 254 Or 168, 274-75, 459 P2d 873 (1969). To suppress the results here would elevate form over substance.

OAR 333-13-022(3)(c)(L), in effect at the time the tests in question were given, described part of the operating procedures to be used with model 4011:

> "Have the subject blow into the Breath Tube, giving a good deep breath. The Breath Indicator Lamp will light up when breath is being properly given. The numbers on the from [*sic*] panel will rise and will level off when the sample cell is filled. After a proper sample is given, the printer will print automatically, the letter "B" for breath, plus the first two digits of the display.
>
> "This technique requires a 12-second expiration with the 'Breath' light turned on."

On June 30, 1978, after these defendants' tests, the Division amended the regulation to eliminate the 12-second requirement and found:

"Rules of the Division relating to the operation of Omicron Systems Corporation Intoxilyzer Model 4011 require a 12-second expiration with 'Breath' light turned on in connection with the subject's breathing into the machine. Such requirement is and has at all times been unnecessary to the accuracy and reliability of the test results obtained from the instrument. The requirement needs to be eliminated in order that a serious prejudice to the public interest not result due to otherwise competent and reliable evidence being excluded in the prosecution of cases in which the alcoholic content of a person's blood is relevant."

Defendants argue that the new regulation cannot be applied "retroactively." Assuming that the cases can only be resolved in favor of the city by application of the amended regulation, the issue would be whether the 12-second requirement could be dispensed with retroactively. In *S.E.C. v. Chenery*, 332 US 194, 203, 67 S Ct 1575, 1760, 91 L Ed 1995 (1947), the United States Supreme Court, referring to an administrative announcement of a new standard of conduct having potentially retroactive effect, stated:

"But such retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law."

The Oregon Supreme Court said in *Derenco v. Benj. Franklin Fed. Sav. and Loan*, 281 Or 533, 539, n 7, 577 P2d 477 (1978), *cert den* 439 US 1051 (1979):

"Statutes or regulations which say nothing about retroactive application are not applied retroactively if such a construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions."

The explanation of the amended rule quoted above shows that the Division plainly intended its clarification of the regulation to apply retroactively.

The discrepancy between the administrative regulation and the actual operation of the breath testing equipment in no way affected the accuracy or reliability of the test results. Therefore no prejudice to defendants resulted from the manner in which the tests here were conducted. More mischief would result from a suppression of valid test results under these circumstances than any ill effect from retroactive elimination of an operational requirement that is irrelevant to the accuracy of the breath tests.

Reversed and remanded.